# CASES DETERMINED

# SUPREME COURT OF ARKANSAS

KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* FORT SMITH
COMPRESS COMPANY.

## Opinion delivered February 24, 1919.

1. CARRIERS—DEMURRAGE—RIGHT TO CHARGE.—Under a contract between a railroad company and a cotton compress company whereby the latter agreed to pay demurrage on cars of cotton remaining unloaded, the former will not be allowed to recover demurrage where the latter's failure to unload was due to the fault of the railroad in not furnishing cars which had been ordered by the latter for the purpose of shipping out the cotton.

2. CARRIERS—CONTRACT.—A stipulation in a contract between a railroad and a cotton compress company that the former should not be liable to the latter "for damages or penalties, whether statutory or otherwise, on account of any failure to furnish or to promptly furnish cars" was not an agreement on part of the latter not to set up as a defense, in a suit by the former for demurrage on cars, that it was prevented from carrying out its contract by the former's failure to furnish cars for shipment.

3. CARRIERS—DEMURRAGE—FAILURE TO FURNISH CARS.—Under a contract between a railroad and a cotton compress company whereby the latter agreed to pay demurrage on cars remaining unloaded, *held*, in an action by the railroad company for demurrage, in view of the evidence, that it was not contemplated that the compress company was to depend upon other railroads for empty cars, so as to relieve the contracting railroad company of the duty to furnish such cars.

4. CARRIERS—DEMURRAGE—CONGESTION OF CARS.—Under a contract between a railroad and a cotton compress company, whereby it was agreed that the compress company could, by giving written notice of a congestion of cotton, refuse to receive more cotton, the railroad company could not claim demurrage on cars which were unloaded on account of a congestion of cotton if its agents knew of the congestion, although no written notice was given, as such notice could have imparted no knowledge to the railroad company.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*James B. McDonough,* for appellant.

1. The court should have directed a verdict for the railroad company for the full amount sued for with interest. The deduction made by the jury was without authority of law and against the evidence and contrary to the contract. No defense was set up in the answer, and final judgment should be entered here for the full amount sued for. The cotton was moving in interstate commerce and the demurrage charge was duly proven. Even in the absence of a contract or statute carriers may charge for this demurrage. 201 S. W. 787; 113 Ark. 221; 69 N. E. 825; 112 Ill: App. 302; 35 S. W. 193; 72 *Id.* 122; 25 So. 579. Demurrage is part of the transportation charges. 243 U. S. 632; 243 *Id.* 444. Contracts for demurrage should be upheld. 71 Mo. App. 310; 27 Penn. Sup. Ct. Rep. 511; 27 Ohio C. C. Rep. 486; 51 Atl. 313; 61 S. W. 57. The carrier is entitled to a lien for demurrage. 37 So. Rep. 667. There is no provision in the contract which entitles the appellee to recoup any damages against the demurrage claims of the carrier. The answer contains no denial of the detention of the cars and states no defense. 30 Ark. 362; 17 *Id.* 597. The burden was on the compress company to establish its right to any reduction or recoupment. After general denials only and after admitting the failure to unload cars as required by the contract, and the wrongful detention the compress company assumed the affirmative of showing a right to recoupment or reduction. Kirby's Digest, § 3106. And having offered no evidence, plaintiff was entitled to a directed verdict for the amount sued for. 122 Ark. 445. The demurrage charges were duly proven. 37 So. Rep. 939. The measure of damages is settled by the contract. 8 A. & E. Enc. L. 636; 89 Mich. 531; 35 N. Y. S. 151; 13 Cyc., note 99; 44 Ark. 439; 12 *Id.* 699. Any reduction of damages or recoupment claimed is affirmative relief and must be set up in the answer and duly proven. 13 Ark. 11, 522; 15 *Id.* 465. See also 17 *Id.*

254; 21 *Id.* 125; 26 *Id.* 309; 31 Cyc. 46; 74 Ark. 93; 30 *Id.* 535; 34 Cyc. 623; 32 Ark. 281.

Unless a cross-action could be maintained by defendant under the contract for failure to furnish cars for outbound cotton over the rails of other carriers plaintiffs charges for demurrage can not be reduced.     32 Ark. 281; 4 Sandf. 147; 9 Mo. 47; Pomeroy on Rem., § 742; 25 A. & E. Enc. L. 548.     The custom as to loading cars over other roads was properly proven and that defendant knew of the custom and signed the contract with knowledge of it.

2. The court erred in admitting the evidence of Creekmore and Lee as to a custom in 1918.     Such testimony is not admissible.     108 Ark. 483.

3. Defendant can not recover because it failed to give the written notice of congestion required in the contract.     Michie on Carriers, § 371; 139 S. W. 803.

It follows that plaintiff was helpless in the premises. · It was bound to receive and transport the cotton.     84 Ark. 150; 50 *Id.* 397; 57 *Id.* 112.

4. The court erred in its instructions.     They do not state the law correctly.     Cases *supra.*

A custom is established if it is shown that it has been uniform, definite and known.     108 Ark. 437; 84 *Id.* 382; 91 *Id.* 310; 118 *Id.* 316; 46 *Id.* 210; 58 *Id.* 578; 46 *Id.* 222; 19 *Id.* 270; 113 *Id.* 325; 106 *Id.* 400.     The compress company was bound by the custom, *supra.*     Under that custom appellant was under no obligation to furnish cars for cotton moving out over the rails of other carriers.

There was therefore error in the court's charge to the jury and defendant's answer is not supported by the evidence.

*Harry P. Daily*, for appellee.

It is a good defense to an alleged breach of contract to show that plaintiff himself prevented defendant from performing the contract.     That is the gist of the defense here, and it is absolutely supported by the evidence.     36 N. Y. 388; 89 *Id.* 566.

2.   The proof here is undisputed as to the defense alleged, and the facts alleged in the answer were admitted by the only two witnesses for the railroad company. The railroad company during the entire season brought cotton to the compress company from points on its line which was compressed, and that appellant would issue bills of lading and order the compress company to load same at once and then refuse to furnish cars. The appellant controlled the routing.

3.   The railroad company from the first absolutely and continually refused to furnish the cars and no demand was necessary. It prevented appellee from carrying out its contract.

4.   Written notice was unnecessary of the congestion as it was the railroad's fault.   85 Ark. 596.

SMITH, J.   The parties to this litigation, the Kansas City Southern Railway Company, hereinafter referred to as the appellant, and the Fort Smith Compress Company, hereinafter referred to as the appellee, entered into the contract out of which the litigation arises on September 1, 1916, the relevant features of which are as follows:

It is recited that appellant, which brought this suit to recover the damage by way of demurrage for an alleged violation of the contract, owns and operates certain sidetracks and switches connecting the railroad with the premises and property of the appellee compress company. . "That by reason of the nature of cotton and the commercial practices and customs under which it is handled and by reason of the conditions of buying, selling, storing and transporting it, and by reason of and for the general convenience of all concerned, the railway company and the compress company agree and covenant to occupy and use jointly the property and premises of the compress company for the several purposes and to the extent hereinafter set forth.

"The intent and purpose of this agreement, among other things, is to confirm the compress company as

the limited agent of the railway company for the purpose of receiving cotton from the railway company, delivering cotton to the railway company, loading and unloading cotton from and into the cars of said railway company, making proper delivery of cotton in the custody of said compress company so far as concerns the interest of the railway company, and, as principal, to furnish the premises for the use of the railway company as a cotton depot under and subject to all the terms and conditions of this agreement and the lawfully published tariffs and regulations of the railway company with respect to the transportation and handling of cotton.''

There follows an enumeration of four grades designated, respectively, as (a), (b), (c) and (d), which the contract provided should be handled by the compress company.

Class (a) was cotton delivered by the owners to the compress company and intended for shipment over the lines of the railway company and its connecting carriers. This grade of cotton is also referred to as wagon cotton, it being delivered to the compress company on wagons.

Class (b) was cotton consigned to compress points on local bills of lading and so consigned that when delivery is made by the railway company to the compress company for the consignees thereof the contract of carriage made by the railway company is completed.

Class (c) was cotton destined to compress points consigned to ''order,'' or in any other manner, which is to be held by the compress company for account of the railway company until released by the railway company. As to this class the contract provided, ''The railway company may place the cars containing such cotton alongside the compress platform and when the railway company furnishes to the compress company a written statement of such cotton showing plainly that it is covered by an 'order' bill of lading, or is for any other reason to be held for its account, the compress company agrees to receive and unload such cotton and deliver to the agent of the railway company compress warehouse receipts there-

for. The compress company further agrees to hold such cotton and be responsible to the railway company for the loss of or damage thereto occasioned in any manner howsoever other than fire until such cotton is released in writing by the railway company and the compress warehouse receipts are surrendered to said compress company.''

Class (d) was cotton covered by through bills of lading delivered by the railway company to the compress company for compression, the time allowed for that purpose being only forty-eight hours unless extended by the railway company.

The contract further provided that if appellee should be unable to handle the cotton at any time by reason of congestion or accident to its plant it should have the right to cease, temporarily, to receive cotton falling in either class (b) or (c) after causing written notice of such intention to be served upon the resident station agent of the appellant company thirty-six hours before it became effective. It was further provided that in the event of failure of appellee to promptly load or unload cars placed for loading or unloading it should pay appellant one dollar per car per day for each day, or fraction thereof, after forty-eight hours (Sundays and legal holidays excepted) from the time each car was placed for loading or unloading, or when tendered and appellee was unable to accept.

The complaint alleged that during the months of October, November and December, 1916, the appellee had retained cars of the appellant over and above the free time allowed amounting to 2,698 cars for one day, and prayed judgment for the sum of $2,698. An itemized statement of this demurrage was furnished, and its accuracy appears to be conceded; but appellee seeks to avoid the liability which the contract would otherwise impose by showing that the delay in unloading cars upon which the claim for demurrage was based was wholly due to the fault of appellant in not furnishing cars to forward cotton already received from appellant and com-

pressed by appellee and which had been ordered out by appellant and for which appellant had issued bills of lading, and that during the whole of the period of time during which the claim for demurrage had accrued, appellant was constantly tendering to appellee cotton to be unloaded and compressed, while refusing and failing to furnish cars into which to load said cotton when compressed, although appellant had ordered said cotton out and had issued bills of lading therefor, and that during all said period it was constantly notifying appellant that it could not properly unload cars of inbound cotton unless cars were furnished for outbound cotton which had been compressed and for which appellant had actually issued bills of lading, and that appellant company at all times had full knowledge of these facts and through its officers and agents had waived any right to recover from appellee for failure to unload said cotton.

This litigation involves only class (c) cotton. As previously stated, this was cotton which had been shipped from points along appellant's line of railroad and which was shipped out of the compress on the orders of appellant and upon its bills of lading. As to such cotton, it was admitted by appellant that it not only received the freight from the point of origin on its line to Fort Smith, but also shared with the carrier which hauled the cotton to its final destination (usually some city of export) the freight earned on this long haul. It was shown that the custom had prevailed for the Iron Mountain Railroad and the Frisco Railroad (other railroads running out of Fort Smith) to furnish the cars for shipments of cotton routed over their lines, although the bills of lading were issued by the appellant company. Prior to 1916 there had been no difficulty in obtaining cars, but the cotton crop of that year was marketed unusually early and on account of the high price prevailing was marketed with unusual rapidity so that a sufficient number of cars was not available to supply the demand.

It is undisputed that repeated and insistent requisitions for cars were made by appellee on both the Iron

Mountain and Frisco railroads, but those railroad companies refused to furnish their own cars for the shipment of cotton covered by bills of lading issued by appellant. It is also undisputed that when appellant ordered out cotton it designated the railroad over whose line it was to be shipped. Appellee could only tender the cotton to the designated carrier and demand cars into which to load it, and appellant was advised that these cars were not being furnished and that because of this failure the congestion at the compress was daily becoming more acute.

Appellee's managing officer did not contend that all the delay in unloading cars was attributable to the loading and unloading of class (c) cotton, and estimated that twenty per cent. of the demurrage accrued on account of cotton of other classes. Liability for this twenty per cent. is admitted and reversal of the judgment for that amount against appellee is not asked. The judgment was rendered for only this twenty per cent. and appellant complains of that fact and insists that judgment should be rendered here for the remaining eighty per cent. of the accrued demurrage.

At appellant's request the trial court told the jury that if no part of the demurrage accrued by reason of the failure or refusal of appellant to furnish reasonably adequate car facilities appellant would be entitled to the demurrage claimed. But at appellee's request, and over appellant's objection, the court gave the converse of this instruction and told the jury that if a part of the demurrage claimed accrued because of the failure of appellant to furnish reasonably adequate car facilities for handling outbound cotton ordered out by the appellant, then as to such demurrage accrued by reason of that fact the appellant would not be entitled to recover.

This instruction is decisive of the case, as the verdict of the jury is conclusive as to the extent to which the demurrage accrued on some other account. We approve this instruction because it is an application of the elementary principle that a party to a contract can not

render its performance impossible by the other contracting party and then sue for damages for its breach.

It is very earnestly insisted that judgment should be rendered here for the full amount sued for because appellee admits that there was demurrage to the extent alleged, and it is pointed out that the contract provides that "the railroad company shall not be liable to the compress company for any damages or penalties, whether statutory or otherwise, on account of any failure to furnish or to promptly furnish cars," and it is argued that to allow any credit on the admitted demurrage by reason of the failure to furnish cars is to adopt a measure of damages on that account which contravenes the express recital of the contract that no such damages shall be allowed. But it is pointed out in appellee's brief that the agreement that the railway company should not be liable for damages for failure to furnish cars might operate to defeat an independent suit for damages on that account, without having the effect of precluding the compress company from setting up this failure to furnish cars to defeat a suit against it for demurrage for failure to unload cars, when this failure to unload the cars was caused by the railroad's antecedent failure to furnish cars to load out cotton which had already been compressed, thereby affording the necessary space for unloading the cars in question. In other words, the agreement of the compress company not to hold the railway company for penalties or damages for failure to furnish cars can not be construed as an agreement on the part of the compress company, in a suit by the railway company against it, not to set up and prove, as a defense, that it was prevented from carrying out the contract by the refusal of the railway company to perform its duty in furnishing cars.

It is insisted on behalf of appellant that inasmuch as the custom had been, prior to 1916, for both the Iron Mountain and the Frisco railroads to furnish cars upon demand, the parties must be held to have contracted with reference to this custom. But on behalf of appellee it is

shown that no issue about the duty to furnish cars had ever arisen prior to 1916, and appellee's manager testified that the compress company had never acknowledged the existence of any custom absolving the appellant from the duty to furnish cars for the shipment of cotton covered by appellant's bills of lading. Appellee was not a carrier and had no cars of its own and it could only call upon the railroads to furnish the cars for the shipment of cotton covered by appellant's bills of lading, and in doing so it was acting as the agent of appellant, and appellees as appellant's agent made repeated demands for these cars and as frequently advised appellant that these demands were not being supplied, and appellant itself made no offer of its own cars. Under these circumstances the court was warranted in giving, at appellee's request, the instruction set out above.

It is finally insisted that appellee failed to give appellant the written notice which the contract provided should be given in case of congestion. Such a notice would have accomplished no result, as it is not even claimed by appellant that its policy would have been altered had written notice been given. It is undisputed that appellant's agents, not only were warned of the congestion, but these agents admit having knowledge of this congestion at all times and that the situation was being constantly accentuated by the continued delivery of cotton at the compress, and a written notice could have imparted no additional knowledge to appellant.

Finding no error the judgment is affirmed.

WOOD and HART, JJ., dissent.